JONES *v.* STATE.

(In Banc. Nov. 11, 1940.)

[198 So. 555. No. 34144.]

J. A. McFarland, of Bay Springs, and J. M. Travis, of Meridian, for appellant.

534

**W. D. Conn, Jr.**, Assistant Attorney-General, for appellee.

Argued orally by **J. M. Travis**, for appellant, and by **W. D. Conn, Jr.**, for appellee.

**Ethridge, J.**, delivered the opinion of the court.

This suit was brought in the Circuit Court of Jasper County, the appellant being charged with murder, the

jury returned a verdict convicting him, and he was sentenced to imprisonment for life in the state penitentiary. From this sentence an appeal was taken here.

It appears that Curtis Jones, son of the appellant, and Jack Smith, who was killed by the appellant, had had a difficulty concerning Jack Smith's stock, which had trespassed on Carl Jones' property, depredating in his cane patch. The appellant had sent his son to notify Jack Smith to keep his stock out of the patch, and the two had a difficulty at Jack Smith's home. The testimony as to what occurred there is conflicting.

Curtis Jones returned to his father's house after this difficulty with Jack Smith; whereupon he and his father left the house carrying a single-barreled shotgun. The appellant went to the home of the preacher in charge of his church, in which he and Jack Smith were both officers, and had a conversation with the preacher in reference to the trouble between him and Jack Smith. There was some dispute as to just what was said in the course of the interview. When the appellant went into the preacher's home, his son, Curtis Jones, went to a nearby store, carrying the shotgun, for which he tried to buy some shells, as the evidence shows. A witness, Vina Lightsey, testified that he said he was going to kill Jack Smith. The appellant was not with Curtis at the time. This evidence was admitted over the objection of appellant, the objection being overruled. The storekeeper also testified, over the objection of the appellant, that Curtis Jones tried to buy some additional shells for his gun, stating that he had two, but that was not enough. The witness testified that he refused to sell him the shells—that Curtis Jones said he was going to kill Jack Smith. As stated, the appellant was not present at the time. After he discussed the matter with the preacher, the appellant started back to his home, and on the way met Jack Smith and shot him.

The testimony of the appellant as to what happened at the home of the preacher was to the effect that he asked

the preacher to see Jack Smith, with a view to adjusting their trouble; but that the preacher said he could not do anything with Jack Smith—that so far as he knew, no one could—and declined to intervene. The preacher's version was that the appellant came to see him about the matter, desiring him to try to induce Jack Smith to keep his stock from trespassing on his farm, and to adjust the difficulty if possible; that he advised the appellant to go back and try to settle the matter with Jack Smith peaceably, quoting certain Scriptures, and urging him to "go the additional mile"—that "if a person asks for your coat, give him your clothes also"—having reference to the Sermon on the Mount. He said to Carl Jones that he and Jack Smith were neighbors, members of, and officers in, the same church, and that they should not be hostile to each other, or in disagreement. He stated that the appellant agreed to go back home and build up his fence, setting it back within his own line; but that he would not permit Jack Smith to cross over the fence.

The appellant left the preacher's home, going north, and Curtis Jones a little later passed the house, also going north, with the gun on his arm—the preacher did not know whether or not he caught up with his father.

The appellant and his son testified that they met Jack Smith on the way home, riding his horse; and that he stopped and told them they were going to settle the matter that morning, to which the appellant replied that they hoped they could settle it peaceably; that to this Jack Smith replied, "No, I am going to kill you this morning," and made a motion toward his back pocket, whereupon the appellant, who had the gun in his hands, raised it and fired. Jack Smith fell from his horse, and defendant and his son did not stop to see the effect of the shot, but proceeded on their way, looking for an officer to whom to surrender, they said.

At the time of the killing two men were approaching the scene, and they saw the appellant raise the gun and fire at Jack Smith, but did not hear the words that passed

between them. These men did not stop to investigate; but another party, hearing the shot, proceeded in that direction, and meeting Carl Jones and his son, Curtis, the latter carrying the gun, asked Curtis what he was shooting at. Curtis replied that he did not shoot, but that "Pa did it," or words to that effect. Looking at the body of Jack Smith, this party found a hole in his breast about as large as a teacup. He testified that in Jack Smith's hand was gripped a riding switch, and in his pocket was an empty bottle, but that he had no weapons on his person. This party testified that on meeting the appellant and his son, Curtis Jones, the appellant applied an ugly epithet to Jack Smith, saying that they had become tired of fooling with him, or similar words.

Another witness testified, impeaching the testimony of a member of the family of Carl Jones, to the effect that they (using the word "they" to indicate, apparently, Carl and Curtis Jones) were going to shoot Jack Smith, and that the member of the family did not care.

There was also testimony to the effect that Curtis Jones had stated, in the absence of Carl Jones, that he was going to kill Jack Smith before the sun went down. There was considerable contradiction between the testimony for the state and for the defendant. There was ample proof to warrant the jury in convicting the appellant of murder, but the admission of the evidence as to threats on the part of Curtis Jones, in the absence of appellant, to the two witnesses above mentioned, was objected to, and the objection overruled. This is assigned for error.

It is also assigned for error that the record does not sufficiently show the organization of the Circuit Court at the term at which the indictment was found against the appellant; and that it does not sufficiently show the legality and organization, and drawing of jurors at the term at which the appellant was tried. We think the record shows the proper organization of the court on each occassion. We do not think the court should have admitted the threats by the son of appellant in the latter's absence.

While the evidence would be sufficient without these statements, if believed by the jury, to convict the appellant of murder, we do not think that it is sufficient to show a prior conspiracy between Curtis Jones and the appellant.

It is said, and the trial judge must have proceeded upon the idea, that the parties were joint actors at the killing, and that the act of one became the act of the other. The act of one of the joint actors at the time of the killing may be attributed to the other joint actor at the time; but in order to make admissible the declaration of one of the actors prior to the killing there must be proof of a conspiracy between the two to commit the unlawful act.

It is said that the evidence is sufficient to show, by circumstances, a prior conspiracy—that a conspiracy did not have to be proved by direct evidence. We have examined the record in the case, and we do not think that there is sufficient proof to establish a conspiracy to kill, prior to the commission of the act. There is no proof herein as to any act on the part of Curtis Jones at the time of the killing, beyond the fact of his presence under the circumstances stated.

From the evidence it appears that the appellant had gone to see his preacher, with a view to having him bring about an adjustment and settlement of the differences between appellant and the deceased. This seems to have been his purpose. It might be that the jury could find, from all the facts, that it was not his purpose in good faith; but we are not satisfied from the evidence that such was the case.

We think it was reversible error to admit the testimony of Vina Lightsey and the storekeeper, as above set forth, since the threats about which they testified were not made in the presence of the appellant. Because of this error the judgment will be reversed and the cause remanded for a new trial.

Reversed and remanded.